# THE LOUISIANA NATIONAL BANK OF NEW ORLEANS, Respondent, *v.* FREDERICK SCHUCHARDT, LAWRENCE WELLS and EDWARD L. WELLS, Appellants.

*Unconditional promise to accept a bill of exchange — what alteration of the bill amounts to drawing a new bill.*

The section of the Revised Statutes providing that an unconditional promise in writing to accept a bill, before it is drawn, shall be deemed an actual acceptance in favor of every person, who, upon the faith thereof, shall have received the bill for a valuable consideration, is to be reasonably construed with a view to accomplish the purpose intended.

Where, after a bill of exchange has been negotiated, upon condition, however, of its acceptance, the drawer, at the suggestion of the drawee, writes upon its face "payable through the clearing house," such alteration amounts to the drawing of a new bill, within the meaning of said statute, so that a promise to accept made after the conditional negotiation of such bill and just before such alteration is to be considered as made "before it is drawn."

Upon the facts of this case, *held,* that the promise of the defendants to accept the bill of exchange in suit, was an unconditional one, and that defendants were liable thereon.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action at the New York Circuit, by the court without a jury.

*James W. Gerard,* for the appellant.

*Wm. D. Scott,* for the respondents.

INGALLS, P. J.:

This action was brought by the plaintiff to recover upon two bills of exchange—one for $10,000, the other for $20,000. Upon the trial judgment was directed in favor of the plaintiff upon the last-mentioned bill of exchange, amounting to $24,554.20. The appellants insist that they are not liable, because the plaintiff failed to establish an unconditional promise on the part of the defendants to accept said bill before its execution. The plaintiff's right to recover depended upon its establishing a promise to accept said bill within the meaning of the following statute, Vol. 1, 722, sec. 8 (Edm, ed.), Revised Statute, which provides as follows: "An unconditional promise in writing to accept a bill, before it is drawn,

shall be deemed an actual acceptance in favor of every person, who, upon the faith thereof, shall have received the bill for a valuable consideration."

Upon the trial the court decided that the facts proved established such promise to accept, in regard to the bill of exchange for $20,000, and directed judgment accordingly. The findings of fact by the court are very full and particular in regard to the transactions which gave rise to such bills of exchange, and the negotiation thereof. It appears that for a period of ten years, previous to the transactions in question, the firm of Cavaroe & Son, the parties who drew the bill of exchange in question, and who resided in New Orleans, were in the habit of drawing bills of exchange upon parties who resided in France and England, and sending them to the defendants at New York, to be sold by them upon commission. On the 26th day of September, 1873, the negotiation was opened, and continued by letter and telegram in reference to the two bills of exchange which are the subjects of this action. On said twenty-sixth day of September Cavaroe & Son telegraphed to the defendants as follows: "Can you sell exchange now, and at what price;" and on the same day mailed a letter to the defendants, which contained the following: "We purchased to-day cotton for the account of different friends, and sent the above dispatch (recited in letter,) to know if you could do better at New York than we here, where it is impossible to sell exchange." The defendants replied the same day by a telegraphic dispatch, as follows: "Exchange very irregular; sterling about three; francs about five-fifty; if sending, don't draw on us until receiving telegraphic advice of sale." On the same day defendants wrote to Cavaroe & Son, reciting the said telegram, and saying: "Everything is so deranged, and money is so scarce, that it would not be convenient for us to enter into any engagements before being assured of the sale of exchange; but on these conditions our services are always at your entire disposal." On the 27th September, 1873, Cavaroe & Son sent to defendants a large amount of exchange, and on the first day of October following by telegram directed the defendants to sell the same. On the 2d day of October, 1873, they drew the bill of exchange as follows::

" Exchange.for $20,000.    NEW ORLEANS, *October* 2d, 1873.

" At sight of this first of exchange (second unpaid,) pay to the order of Henry Blache, Cashier, twenty thousand dollars, value received, and charge the.same to account.

" C; CAVAROE & SON.

" To MESSRS. F. SCHUCHARDT & SONS, New York.

" No. 3233."

On the same day the bill of exchange was sold to the. New Orleans National Banking Association, of which Henry Blache was cashier, and on the same day the said C. Cavaroe, Sr., who was president of said banking association, as well as a member of said firm of C. Cavaroe & Son, applied to the plaintiff to purchase said last-mentioned bill of exchange, and for the purpose of inducing the plaintiff to purchase the same, represented that it was also drawn against the proceeds of said exchange on Masquelier, Fils & Co. and F. Dumont & Co., which had been sent to the defendants for sale.

Thereupon said bill of exchange for $20,000 was left by C. Cavaroe, Sr., with the plaintiff, which received the same into its possession, *but not as the owner of such bill of exchange.* The plaintiff at the time declined to become the purchaser thereof, as said C. Cavaroe was expecting to receive a telegram from the firm of F. Schuchardt & Sons, announcing a sale of said bills of exchange, drawn by the firm of C. Cavaroe & Son upon the firms of Masquelier Fils & Co. and F. Dumont & Co., and refused to make such purchase until such telegram should be received and shown to them.    On the following day, October 3, 1873, the said C. Cavaroe & Son received from the defendants the following telegram: " New York, October 3, 1873, to C. Cavaroe & Son : sold hundred Masquelier, same Dumont, about thirty-five five-eighths, less quarter.    Gold, ten one-quarter; *make drafts payable through clearing-house;* sterling, six three-quarters; market weak. Signed, SCHUCHARDT."

On the 3d day of October, 1873, the said C. Cavaroe again applied to the plaintiff to purchase said draft for $20,000, at the same time exhibiting the said telegram from the defendants, and thereupon, for the purpose of conforming the said bill of exchange

to the directions of said telegram, a clerk of the plaintiff, under the directions of C. Cavaroe, Sr., altered the same by causing the words, "payable through the clearing-house," to be written across the face thereof. Thereupon, and on the same day, the plaintiff, on the faith of said telegram of October 3, 1873, and of the letter and telegram of September 26, 1873, and relying upon the representations made to plaintiff by said C. Cavaroe, that the firm of F. Schuchardt & Sons would pay the said bill out of the proceeds of the bills of exchange drawn by said Cavaroe & Son on Masquelier Fils & Co. and F. Dumont & Co., purchased and received the said bill of exchange for $20,000 from C. Cavaroe, Sr., the president of said New Orleans National Banking Association, so altered as aforesaid, paying therefor to said C. Cavaroe, as president of said last-named banking association, the sum of $20,000. At the time the plaintiff purchased and received such bill of exchange, the same was duly indorsed in blank by the payee named therein. On the 7th day of October, 1873, said bill of exchange was duly presented for payment to the defendants and payment demanded; which was refused. On the 4th day of October, 1873, the firm of C. Cavaroe & Son suspended payment, up to which period they were in good credit. Two of the defendants, Frederick Schuchardt and Lawrence Wells, were declared bankrupts, and were discharged from their debts subsequent to the making of said bill of exchange and previous to the trial. Judgment was directed by the court and entered against all the defendants, to be collected out of their joint property, or the separate property of Edward L. Wells. We are satisfied that the recovery can be sustained upon the facts found by the court and the legal principals applicable thereto.

The facts show very clearly that the plaintiff purchased such bill of exchange, relying upon the correspondence, by letter and telegrams, between the defendants and C. Cavaroe & Son, especially the telegram of October 3, 1873, which directed the manner the drafts should be made payable, viz., "through the clearing-house." In accordance with such direction, the bill of exchange in question was changed by C. Cavaroe, who was at the time president of the New Orleans Banking Association, and also a member of the firm of C. Cavaroe & Son, and the person who

had the actual possession of said security and negotiated the sale thereof.

The following propositions are established by the facts proved: First, that the defendants at the time the bill of exchange was purchased by the plaintiff, were in possession of funds of C. Cavaroe & Son, derived from the sale of exchange. Second, that such fund was by express understanding to be drawn against by C. Cavaroe & son. Third, the defendants by the telegram of October 3, 1873, which clearly indicates that it was prompted by prior correspondence, prescribed the particular form and manner in which the draft should be drawn upon them with reference to such fund. Fourth, the plaintiff refused to purchase said bill of exchange, until the receipt from the defendants of said telegram of October 3, 1873, and an inspection thereof. Fifth, no other person challenges the right or authority of C. Cavaroe to negotiate the sale of said bill of exchange.

As between the plaintiff and defendants it must be regarded, in view of all the facts and circumstances, as having been drawn subsequent to the receipt of the telegram of October 3, 1873. Up to that time the plaintiff had refused to purchase, and by express declaration made all negotiation in regard thereto, to depend upon the receipt of that telegram. Again, the alteration of the bill in regard to the mode of payment was in our judgment equivelant to the drawing of a new bill. Certainly it cannot be regarded as an immaterial alteration of the instrument. (*Nazro* v. *Fuller*, 24 Wend., 374; *Woodworth* v. *Bank of America*, 19 Johns. Rep., 391; *Calvert* v. *Roberts*, 3 Campbell, 343.) No question is raised in regard to the authority of Cavaroe, to alter and negotiate the bill of exchange. The plaintiff purchased in good faith, and paid an adequate consideration for the bill. The statute in question is not penal, and is entitled to a reasonable interpretation with a view to accomplish the purpose intended. Such construction should not be so liberal as to amount to judicial legislation, nor so technical as to defeat the beneficial purpose intended. We, therefore, conclude that the promise of the defendants to accept the bill of exchange was unconditional and made before it was drawn, and that the defendants are therefore liable thereon. (*Ulster Co. Bank* v. *McFarlan*, 5 Hill., 432; *Barney* v. *Worthington*,

37 N. Y., 116; *Johnson* v. *Clark*, 39 N. Y., 216; 3 Vol. Kent's Com., 83, 84, note [5th ed.])

There does not seem to be any equity established in favor of the defendants, and the claim of the plaintiff is sought to be defeated upon the merest technicality. We do not think the law demands so rigid a construction of the statute in question as will enable the defendants to accomplish a result so unjust. The discharge in bankruptcy of two of the defendants did not entitle them to a dismissal of the complaint. In this respect the learned judge at the Circuit made a proper disposition of the case, relieving those defendants from personal responsibility for the debt.

The judgment should be affirmed, with costs.

DANIELS and POTTER, JJ., concurred.

Judgment affirmed, with costs.